FILED

September 1, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 10:16 AM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Jose Orellana,<br>　　　　Employee, | )<br>) | Docket No.:  2015-06-0248 |
| | ) | |
| v. | ) | State File No.: 32950-2015 |
| | ) | |
| Vazquez Roofing,<br>　　　Employer/Subcontractor, | )<br>) | Date of Injury: March 30, 2015 |
| | ) | Judge Joshua Davis Baker |
| Plaza Insurance,<br>　　　　Carrier, | )<br>) | |
| | ) | |
| Five Points Roofing,<br>　　　Employer/Contractor, | )<br>) | |
| | ) | |
| And | ) | |
| | ) | |
| Liberty Mutual Insurance,<br>　　　Carrier. | )<br>) | |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on August 11, 2015, upon the Request for Expedited Hearing filed by Jose Orellana, the employee, on July 29, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the employer/subcontractor, Vazquez Roofing, or the employer/subcontractor, Five Points Roofing (Five Points) is obligated to provide medical and temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Orellana is entitled to medical benefits.

## ANALYSIS

### Issues

1. Whether Mr. Orellana was an employee of Vazquez Roofing, or an independent contractor, on the date of injury.

2. Whether Mr. Orellana is entitled to medical benefits.

3. Whether Mr. Orellana is entitled to temporary disability benefits.

4. If Mr. Orellana is entitled to workers' compensation benefits, which party must pay those benefits.

### Evidence Submitted

The Court admitted into evidence the exhibits below:

A. Medical records from Maury Regional Medical Center and Vanderbilt University Medical Center;
B. Affidavit of Jose Antonio Orellana;
C. Affidavit of Rebecca Frantz Kingery and attached documents (Plaza Insurance Company Policy Termination and Reinstatement Notice);
D. Affidavit of Charles Cunningham and attached documents (Cunningham Insurance Certificate of Liability Insurance);
E. Affidavit of Logan Hughes and attached documents (Sub-contractor Agreement, Cunningham Insurance Certificate of Liability Insurance, copy of Vasquez Roofing  check to Mr. Orellana dated March 21, 2015);
F.  Vasquez Roofing checks paid to Mr. Orellana; and
G. Cunningham Insurance Agency receipts of payment from Hector Vasquez.

The Court designated the following as the technical record:

- Two Petitions for Benefit Determination (PBDs), both filed April 29, 2015; Docket No. 2015-06-0247 and Docket No. 2015-06-0248;
- Two Dispute Certification Notices (DCNs), dated June 8, 2015;
- Request for Expedited Hearing, dated June 29, 2015;
- Five Points/Liberty Mutual position statement dated May 19, 2015;
- "Motion to Amend to include Plaza Insurance," dated June 18, 2015;
- Order Granting Motion to Amend, dated June 29, 2015;
- Mr. Orellana's position statement dated July 29, 2015; and
- Plaza Insurance Company pre-hearing brief dated August 5, 2015.

2

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

The parties stipulated to the following:

- Paul Varney Construction Company (Paul Varney) is the general contractor.
- Five Points is a subcontractor of Paul Varney.
- Vazquez Roofing is a subcontractor of Five Points.

Hector Vasquez provided in-person testimony.[1]

## History of Claim

Mr. Orellana is a twenty-six year-old resident of Davidson County, Tennessee. He works as a roofer. (Ex. B.)

Paul Varney had a general construction contract to work at a home located at 2886 Fly Road, Santa Fe, Tennessee. It hired Five Points as a subcontractor. Five Points hired Vazquez Roofing as a subcontractor. (Ex. E.) When Five Points hired Vazquez Roofing, Hector Vazquez hired Mr. Orellana to assist in roofing the home. He expected his crew to complete the job in two days and intended to pay Mr. Orellana $300.00. Unfortunately, Mr. Orellana worked for only part of one day.

On March 30, 2015, while roofing the Fly Road home, Mr. Orellana fell from a ladder and injured his right arm and his head. (Ex. B.) Hector Vazquez helped transport Mr. Orellana to Maury Regional Medical Center (Maury Regional). Providers at Maury Regional x-rayed Mr. Orellana and diagnosed a head injury and right-arm and wrist fracture. (Ex. A.) The providers placed Mr. Orellana's arm in a splint and instructed him to follow-up with an orthopedic specialist. *Id*.

On April 20, 2015, Mr. Orellana had surgery at Vanderbilt University Medical Center (Vanderbilt) to treat his work-related injuries. *Id*. Vanderbilt released him on April 21, 2015, but instructed that he return in two to three weeks for a recheck. *Id*. At that time, the medical records indicate the attending physician intended to place Mr. Orellana's arm in a short cast. *Id*. In his affidavit, Mr. Orellana stated his attending physician placed his arm in a cast but later removed it. (Ex. B.) He further stated he has "been unable to work" since the doctor removed the cast. *Id*.

---

[1] Five Points moved to continue the case if Mr. Vazquez failed to attend the hearing. Five Points struck its motion when Mr. Vazquez appeared to testify.

Pursuant to a Subcontracting Agreement with Five Points, Hector Vasquez provided a Certificate of Liability Insurance indicating his company had workers' compensation insurance for the period from May 1, 2014, through April 30, 2015. (Ex. D). Cunningham Insurance Agency (Cunningham Insurance) issued the policy underwritten through Plaza Insurance Company (Plaza) and USLI. In an affidavit, however, Charles Cunningham, the principal for Cunningham Insurance, stated he issued the Certificate of Liability in error because the policy number included on the Certificate was cancelled as of June 27, 2013. *Id.* Mr. Cunningham further stated Vazquez Roofing did not renew the policy. In addition to Mr. Cunningham's affidavit, Rebecca Frantz Kingery, an underwriter, stated in an affidavit that the Plaza policy purchased by Vazquez Roofing cancelled on June 27, 2013, for nonpayment of premium. (Ex. C.)

Receipts from Cunningham show Hector Vazquez or Juan Vazquez made payments to Cunningham Insurance on November 18, 2014, and January 16 and April 15, 2015. (Ex. G.) Hector Vazquez testified they paid the money to Cunningham Insurance for workers' compensation insurance. The receipt from January 16, 2015, showed a zero balance on the account. *Id.*

Mr. Orellana's attorneys and the attorneys for Five Points and Plaza questioned Hector Vazquez about the employment relationship between Mr. Orellana and Vazquez Roofing. He testified that he scheduled the jobs for Vazquez Roofing and called Mr. Orellana to offer him work when he had work available. Hector Vazquez stated he considered Mr. Orellana independent and further stated that Mr. Orellana could work for whomever he pleased. He further testified that Mr. Orellana had been working for another company during the weeks leading up to the March 30, 2015 accident.

Hector Vazquez also agreed, however, that he was Mr. Orellana's "boss." When asked whether Mr. Orellana could leave in the middle of a work day for Vazquez Roofing to do other work, Hector Vazquez said he expected Mr. Orellana to stay the entire day. Hector Vazquez paid Mr. Orellana via check from Vazquez Roofing and did not withhold taxes from the check.

Five Points provided the shingles for roofing of the Fly Road home. Vazquez Roofing supplied the ladder from which Mr. Orellana fell on March 30, 2015. Additionally, Hector Vazquez testified he had responsibility to Five Points for the quality of the work performed by Mr. Orellana and others working for Vazquez Roofing.

Mr. Orellana had his own nail gun and air hose. Additionally, Mr. Orellana could roof the house without Hector Vazquez telling him what to do.

Mr. Orellana filed two PBDs on April 29, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed DCNs on June 8, 2015. The Court consolidated both PBDs

4

under the earlier Docket Number: 2015-06-0247.

## Mr. Orellana's Contentions

Mr. Orellana argues he worked as an employee of Vazquez Roofing, not as an independent contractor. Vazquez Roofing, a roofing subcontractor of Five Points, had control over the roof work at the Fly Road home. Additionally, although Mr. Orellana could work for other entities as a roofer during the same period of time he worked for Vazquez Roofing, that type of employment arrangement is customary in the roofing industry.

Mr. Orellana provided timely notice of his injury. He told Hector Vazquez he got hurt on the day the incident occurred, and Hector Vazquez transported him to Maury Regional for treatment.

Concerning temporary disability benefits, Mr. Orellana admitted he did not have medical proof of his inability to work at this time. He hoped the issue of temporary disability benefits could be resolved if the Court finds the claim compensable. Mr. Orellana argued, however, that if the Court awarded temporary disability benefits based on the medical records and Mr. Orellana's statement in his affidavit concerning an inability to work, the Court should calculate his temporary benefit rate at either $150 per day or the average of the amounts contained in the checks provided in Exhibit F.

## Five Points' Contentions

Five Points argues that the proof shows only that Vazquez Roofing does not have a policy with Plaza insurance. The fact that Vazquez Roofing made premium payments to Cunningham Insurance suggests either a policy exists, or Mr. Cunningham accepted the money but failed to pass it along to the carrier.

Five Points maintains that, while it is a close issue, there are several factors showing Mr. Orellana worked as an independent contractor rather than an employee of Vazquez Roofing. Vazquez Roofing did not deduct taxes from Mr. Orellana's check despite its legal obligation to withhold taxes from all its employees' paychecks. Mr. Orellana had his own tools and also had the ability to work for other entities.

Concerning temporary disability benefits, Five Points calculates a compensation rate of $291.12 based on the checks submitted in exhibit F. Five Points argues, however, that Mr. Orellana failed to carry his burden of proving the period of temporary disability.

5

**Plaza's Contention**

Plaza argues that it should not be a party to the claim because Vazquez Roofing did not have a policy with it when the injury occurred. Plaza requests dismissal of any claims against it.

**Findings of Fact and Conclusions of Law**

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

On March 30, 2015, Mr. Orellana suffered injury to his right arm and head when he fell from a roof in the course and scope of his employment for Vazquez Roofing. Mr. Orellana was an employee of Vazquez Roofing on the date of injury.

Mr. Orellana received emergency medical care for his work-related injuries at Maury Regional. Maury Regional diagnosed a right-arm distal-radial fracture. Maury Regional placed Mr. Orellana's arm in a splint and instructed him to seek follow-up care with an orthopedic specialist. Vazquez Roofing did not provide Mr. Orellana a panel of orthopedic specialists for follow-up care.

Mr. Orellana sought care on his own at Vanderbilt. He underwent surgery to repair his fractured right arm on April 20, 2015.

Vazquez Roofing did not have a workers' compensation insurance policy with Plaza at that time. Five Points, a subcontractor for Paul Varney, hired Vazquez Roofing as a subcontractor. Five Points had workers' compensation insurance coverage through Liberty Mutual Insurance on the date of the accident.

*Application of Law to Facts*

## I. Plaza Insurance should be dismissed as a party to the claim.

The evidence showed that Vazquez Roofing previously had a policy with Plaza. The policy, however, was cancelled on June 27, 2013. Vazquez Roofing did not renew the Plaza policy and did not have a Plaza policy in place on the date of Mr. Orellana's injury. Accordingly, Plaza has no liability, and all claims against it for Mr. Orellana's March 30, 2015 workplace injury are dismissed.

## II. Mr. Orellana was an employee of Vazquez Roofing.

Tennessee law provides the following concerning the determination of whether an individual is an employee or an independent contractor:

In a work relationship, in order to determine whether an individual is an "employee," or whether an individual is a "subcontractor" or an "independent contractor," the following factors shall be considered:

(i)     The right to control the conduct of the work;
(ii)    The right of termination;
(iii)   The method of payment;
(iv)    The freedom to select and hire helpers;
(v)     The furnishing of tools and equipment;
(vi)    Self-scheduling of working hours; and
(vii)   The freedom to offer services to other entities[.]

Tenn. Code Ann. § 50-6-102(11)(D) (2014). Whether claimant is an employee or independent contractor depends upon the nature of business of alleged employer, the way the business is conducted, and the claimant's relationship to that business. *See Seals v. Zollo*, 327 S.W.2d 41 (Tenn. 1959). Where there is a contract of employment, either express or implied, the burden is on the employer to show that the employee is an independent contractor, rather than an employee. *See Galloway v. Memphis Drum Serv.*, 822 S.W.2d 584, 586 (Tenn. 1991); *Butler v. Johnson*, 426 S.W.2d 515 (Tenn. 1968). "While no single factor is determinative when deciding whether a worker is an employee or an independent contractor, the Supreme Court has repeatedly emphasized the importance of the right to control the work when distinguishing employees and independent contractors, the relevant inquiry being whether the right existed, not whether it was exercised." *Jewell v. Cobble Const. & Arcus Restoration*, No. 2014-05-0003, 2015 Tenn. Wrk. Comp. App. Bd. LEXIS 1, at *15 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015) (citing *Galloway*, 822 S.W.2d at 586) (internal quotations omitted).

Vazquez Roofing and Mr. Orellana had a verbal contract for employment. Hector Vazquez called Mr. Orellana and asked whether he wanted to work for Vazquez Roofing at the Fly Road jobsite. The Court finds that Mr. Orellana verbally accepted the job offer as evidenced by his attendance at the worksite on March 30, 2015. Accordingly, Vazquez Roofing has the burden to prove that Mr. Orellana worked as an independent contractor rather than an employee.

Vazquez Roofing had ultimate control over the work. It maintained the work schedule. Mr. Orellana never knew where he was working, or whether he even would be working, until informed by Hector Vazquez. Hector Vazquez called Mr. Orellana when he had an available job. If he accepted the job, Mr. Orellana then either drove to the worksite, or, in the case of the Fly Road job, got a ride from Hector Vazquez.

Hector Vazquez considered himself Mr. Orellana's boss. He testified that whenever Mr. Orellana came to work a job for Vazquez Roofing, he expected Mr. Orellana to remain at the worksite for the entire workday. Accordingly, despite Mr. Orellana's freedom to work for other roofing companies, he did not have the freedom to leave a Vazquez Roofing job during the workday to perform another project.

Hector Vazquez had ultimate responsibility to Five Points for the quality of the work. He oversaw Mr. Orellana and other employees as they installed the roof and directed them to make corrections in their work as necessary.

While Mr. Orellana provided some of his tools for the job, he did not provide any of the materials necessary for the work. Hector Vazquez testified that Five Points provided the shingles for use on the roof and that Vazquez Roofing provided the ladder from which Mr. Orellana fell.

Upon consideration of these facts, the Court finds that Mr. Orellana was an employee of Vazquez Roofing, rather than an independent contractor, when he suffered an injury while working at the Fly Road home on March 30, 2015.

### III. **Mr. Orellana suffered an injury in the course and scope of his employment for Vazquez Roofing.**

In his affidavit, Mr. Orellana stated he fell from a ladder on March 30, 2015, while working on a roofing job for Vazquez Roofing. Hector Vazquez took him to the hospital for treatment. The Court finds Mr. Orellana established that he suffered an injury arising primarily out of and in the course and scope of his employment for Vazquez Roofing and is likely to prevail at a hearing on the merits on that issue.

IV. **Five Points Roofing is the statutory employer, and its carrier must provide payment for Mr. Orellana's injuries.**

Tennessee Code Annotated section 50-6-113 provides the following:

(a)  A principal contractor, intermediate contractor or subcontractor shall be liable for compensation to any employee injured while in the employ of any of the subcontractors of the principal contractor, intermediate contractor or subcontractor and engaged upon the subject matter of the contract to the same extent as the immediate employer. . . .

(c) Every claim for compensation under this section shall be in the first instance presented to and instituted against the immediate employer, but the proceedings shall not constitute a waiver of the employee's rights to recover compensation under this chapter from the principal contractor or intermediate contractor[.]

*Id*. § 50-6-113(a) and (c) (2014).

The evidence shows that Mr. Orellana worked directly for Vazquez Roofing when he suffered injury at the Fly Road home on March 30, 2015.  The parties stipulated that Paul Varney served as the principal contractor and subcontracted with Five Points.  Five Points hired Vazquez Roofing as a subcontractor.

The evidence shows that Vazquez Roofing did not have valid workers' compensation insurance.  Although Hector Vazquez paid Cunningham Insurance for workers' compensation insurance, Vazquez Roofing did not produce evidence of an active policy.  Mr. Orellana instituted an action for recovery against both his immediate employer, Vazquez Roofing, and the next immediate subcontractor, Five Points, and thereby satisfied the procedural requirements of Tennessee Code Annotated section 50-6-113(c).  Accordingly, the Court finds that Five Points and its carrier must pay the medical bills incurred by Mr. Orellana for treatment of his March 30, 2015 workplace injury and provide continuing, reasonable and necessary treatment.

V. **Mr. Orellana is not entitled to temporary disability benefits.**

An employee is entitled to receive temporary total disability benefits pursuant to Tennessee Code Annotated section 50-6-207(1) whenever the employee has suffered a compensable, work-related injury that has rendered the employee unable to work. *Simpson v. Satterfield*, 564 S.W.2d 953, 955 (Tenn. 1978); *James v. Landair Transport, Inc.,* No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS ___, slip op. at 8 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015).  In order to establish a prima facie case for temporary total disability benefits, the worker must show that (1) he or she was totally

disabled and unable to work due to a compensable injury, (2) that the work injury and inability to work are causally connected, and (3) the duration of the disability. *Gray v. Cullom Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004). Entitlement to temporary total disability benefits ends whenever an employee is able to return to work. *Cleek v. Wal-Mart Stores, Inc.*, 19 S.W.3d 770, 776 (Tenn. 2000).

Mr. Orellana proved that he suffered a workplace injury that likely disabled him from working for some period of time. He has, however, failed to prove the period of disability. Without that information, the Court cannot order temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Orellana's injuries shall be paid, and Five Points or its workers' compensation carrier shall provide Mr. Orellana with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Five Points or its workers' compensation carrier providing Mr. Orellana with a panel of physicians as required by that statute. All medical bills for treatment previously rendered for the March 30, 2015 injury shall be paid. Medical bills shall be furnished to Five Points or its workers' compensation carrier by Mr. Orellana or his medical providers.

2. The Court denies Mr. Orellana's request for temporary disability benefits at this time.

3. All claims against Plaza Insurance for Mr. Orellana's March 30, 2015 workplace injury are dismissed.

4. This matter is set for a Scheduling Hearing on October 13, 2015, at 8:30 a.m. (CDT).

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

10

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 1st day of September, 2015.**

_____
**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 to participate in the Scheduling Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or

11

other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 1st day of September, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|------|------|------|------|
| William Merrill | | | X | bill@higginsfirm.com |
| Jim Higgins | | | X | jim@higginsfirm.com |
| Owen Lipscomb | | | X | owen.lipscomb@libertymutual.com |
| Colin McCaffrey | | | X | colin.mccaffrey@sa-trial.com |
| Hector Vazquez | X | | | 305 Charmaine Court Antioch, TN 37013 |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**